Case No. 15-2204, PSI Resources v. MB Financial Alright, will the counselors approach please? Please identify yourselves for the record. My name is Eddie Manelas on behalf of Plaintiff Appellant. Benjamin Haskin on behalf of MB Financial. Okay, alright. So we'll give each side 15 minutes apiece and then one time for rebuttal. I would like to reserve 4 minutes. Okay? Alright, we'll proceed. Before you start, let me ask you this. Is your case any different than the Continental case? It is a little bit different than the Continental case factually because Continental involved the payment of items. I should back up a little bit. It is a little bit different than the Continental case because in Continental, the depositor, the bank holder, the account holder, both wrote the checks and was depositing checks into Continental Bank. So it was the account holder at Continental Bank. They wrote checks. But they're both banking transactions, aren't they? They're both banking transactions and we actually rely on Continental for the purposes of the underlying cause of action in that the case says there's a duty of care when you have a deposit account to make sure that the deposits are properly made. Alright, so you're not telling us that Continental was wrongfully decided? We're saying Continental is slightly different on the facts with respect to the 10-year statute of limitations because the 10-year statute or the application of the 10-year statute of limitations or the 3-year under the UCC. And the slight difference is in Continental because the deposit holder, the account holder, was both the check writer and the check depositor in that instance, there was a section of the Uniform Commercial Code under which the depositor could have brought an action against the bank. So there was a specific section of that which could have applied. And therefore, our argument is that allows the court to apply the 3-year statute of limitations of the Uniform Commercial Code. In our case, since we are only depositing checks that we receive from third parties, none of the provisions, there's no relief for us under any terms of the Uniform Commercial Code that would allow us to sue on a Uniform Commercial Code theory, only the common law duties which Continental says continue to exist. So based on that, our argument is that, you know, Continental for that, the limited purposes of the statute of limitations should not apply. We should have the 10-year common law statute of limitations for written agreements because we're depositing checks pursuant to the written deposit agreement that the companies have with the bank. So that sort of sums the, you know, the 10-year. And we're not, you know, bending that for purposes of the argument here, though. I think I'm concentrating more on what the court found with respect to the notice that the court says was given by the one-page exhibit that's found in the record at C00219, a page of a bank statement that says it's 23 pages long, and that that statement was noticed to the companies that there was a problem with the deposits and they should have known or should have known. So if the Uniform Commercial Code, the three-year Uniform Commercial Code statute of limitations applies, then based on that, without the discovery rule, this would be barred. This action was filed more than three years after the last checks were deposited that formed the basis of the action. But our position is, and this was, you know, Judge Barkowitz also found this, was that the original complaint Judge Barkowitz found showed that the discovery rule applied and so the cause of action did not approve until the three predecessor companies, PSI, TSI, and LSI, knew or should have known and they didn't know or shouldn't have known because of the fraudulent activities of the controller of the companies. Well, what about the argument that we're not talking about just the one notice statement, but we're talking about a series of statements over a period of time that were issued and that therefore, based on that, you should have had some awareness or your client should have had some awareness that there were some discrepancies taking place? Well, I think if you look at the statements, it's the one statement, and I say it's one statement as an example of all of them. The problem is the statement with respect to the deposits only states a date, an amount, and a deposit. It doesn't state the amount of the items, and it doesn't state what was, you know, whether they belonged in this particular account or some other account. There's no payee information, and so there's no information in any of the statements, and the amended complaint alleges, I believe in paragraph 9 or 10 of the amended complaint, that the statements, it's paragraph 10, that the statements did not include sufficient details regarding the checks deposited and did not include copies or images of those checks. So you're getting a statement, and all the statement says deposit, and if you look at, for example, exhibit B to the amended complaint, it's in the appendix, but it's C00179, if you just go down the dates, you can see that there's more, there's multiple, on one date, there's multiple checks being deposited. That's not reflected in these statements. One of the problems with that argument is the fact that, you know, in one month alone there was $25,000 that should have been deposited in the account that wasn't when the reasonable person had realized that they were $25,000 short here. Well, the problem is if you look at the amended complaint, Kavanaugh's scheme was a lot more complicated than just doing this. This is one piece of this larger scheme, and the allegation is that he was not paying the taxes that were due for the employee taxes. So the accounts, I think these, you know, I think when you look at the accounting. I'm only talking about deposits. Deposits would be a red flag. If there's $25,000 less, a reasonable person gets a bank statement. They don't have to have checks or anything else. They could see that their deposits are $25,000 short. How do you get around that? Well, you have a controller receiving a lot of checks and depositing them into accounts. The bank account balances don't show any reduction in loss of checks because the accounts themselves should have money for payment of these tax obligations, and Kavanaugh manipulated that by not paying those taxes. So that's the problem that, you know, the whole Kavanaugh, the Kavanaugh scheme is much bigger than just what happened with Paul Taylor. He is not paying the amounts. If Kavanaugh had made the payments from the accounts that were required for the taxes, then that would have triggered, yes, there would have been a shortage in the accounts, and the officers would have known something was wrong with the deposits. But that's what the problem was. Kavanaugh hid that from these people, and he had this scheme, and it's almost, you know, it's not check hiding, it's a scheme where he's misdirecting funds, we believe, so that he can cover up the fact that he's stealing somewhere else. So it's not, you know, I've seen many employee instances where they've stolen from companies, but this one is more sophisticated than just stealing a check and not making it up for it somehow. And this is how we believe he made up for it, by misdepositing amounts and by not paying them. So the company had no notice of this until Kavanaugh withdrew, and that's when most of these schemes become apparent to the company. Once the guys no longer dare manipulate the books, the company becomes aware, and that's when the cause of action occurred. That's when they knew or should have known without, you know, other information that this was going on in the accounts. The bank certainly didn't, you know, there's been no evidence that the bank noticed anything wrong and sent any kind of notice to companies that, look, we found these deposits and did you know they're being misdeposited. There's nothing like that in this case that would indicate the company had any notice while Kavanaugh was there. All right, well, let me ask you this. This part in Haddad's versus credit union, in looking at the discovery rules, said that it would be unfair to apply the discovery rule to individuals as opposed to commercial institutions that are better adept at finding items that don't reconcile. So how would you respond to the argument that's raised in Haddad? Well, Haddad's involved, again, payment of items. And payment of items comes in under the other statute that has a requirement that you do an investigation of a bank statement. And that same section that requires you to examine your bank statement has requirements, even on the bank, 4-406, which is one of the things that the defendant argues should apply here, even though that requirement doesn't apply here. It does not apply here. 4-406 is limited to payment of items. And payment of items are things coming out of the company's account, such as checks or drafts. And that statute specifically requires, and it only has the duty to, in fact, it only has the duty to examine if the bank makes available the statement that contains sufficient information to identify or provides a copy of the items. That's why when you look at a bank statement, I mean, that's really the reason, if you look at a bank statement, why you get a bunch of information about the checks or you get copies of the checks, and why the sections on deposits look different. And if you look at the exhibit that Cole Taylor provided, there's 43 pages according to this. It's one of 23. But only one page deals with deposits, so 23 other, you know, 22 other pages deal with some other subject. And that's the checks. And so in Haddad's, that's why they looked at it, I think, that way, because it was under a payment of items as opposed to the deposits. So that's why I think Continental, you know, clearly says the discovery rule applies in this type of case where it involves deposits instead of the payment of the items. With respect to one of the arguments that defendants raised, I just want to point out, in addition to the problems that the bank raises with 4-406, it makes an argument that because the plaintiff was able to file this case in 2014, they must have had this information somehow prior to 2011 through the statements. And I think that's false, and it's obviously false from the record. One, we have the allegation that I read about how, you know, they did not have these images at the time, and they didn't have the copies of the checks. And if you look at the exhibits that are attached and list the checks, it actually shows which endorsement was made on the check, you know, who endorsed the check that actually got deposited. The only way you have endorsement information is if you have copies of the checks. We allege that there was an investigation done. It doesn't detail exactly what the accountant did to get this information, but this information, there's no way that based on if they looked at copies of deposits, if the company looked at copies of deposits, they would have had any way of knowing what the endorsement information was, because that would be information that was after the check was deposited. This information clearly comes from something that happened afterwards, and the bank is arguing that, you know, we obviously had it, but there's nothing in the record, there's no evidence of that in the record, and I think it's contradicted by the fact that this information was not available and contradicted by the allegations of the complaint. Regarding 4-406, while we're sort of looking at that, the bank wants to say that logically the duty of the depositor should logically extend to deposits, even though they're only deals with paid items. And I just want to respond briefly that, you know, the statute also could be just the end of the client's duty in saying that's all the client has to do. There's no logical extension argument either, and there's no evidence or facts that, you know, The bank also argues, the only last point I just want to make on that, the bank argues that the companies had the duty to find it somehow aside from the statements, and there's no citation of authority or any kind of reasonable argument that companies have some sort of duty to audit their own books and records every year. This employee had been employed since 1995 as the company controller, so for 13 years until he started, it was 13 years from the time he was hired until these checks started appearing. The company had no notice of any potential problems during that time. There's no reason to suspect him of any kind of wrongful activity, and the only information that they're getting back on the deposits would be from the bank statements themselves, which don't have this kind of information. The bank wants to sort of disclaim its role in this, but clearly a teller receiving checks into the wrong account could have easily identified that, and to say that somehow the company has to discover this without the help of the bank, even though the company is relying on the bank to accept its deposits properly, just is an unreasonable argument. In terms of a scale, you're saying that you didn't have sufficient information. Right. So what is sufficient information? Do you have to have absolute clarity here in terms of there's something going on here? I mean, don't you have an obligation or responsibility here to make a reasonable inquiry as to maybe there's something that, there's something askew? Once something is figured, you have a duty to make a reasonable inquiry. So what's sufficient information here? I believe the sufficient information occurred when Caballero resigned and the accountant came in and found that the taxes had not been paid. At that point, you know something is wrong with your books and records, and that's what is there. Well, it's kind of obvious at that point, isn't it? Well, but there's nothing else before that. I mean, that's the problem. What triggered it prior to that? You know, companies don't routinely, I believe, go through and audit their own deposit statements every month just to make sure the deposits were right, and there's been no citation of authority that that's the case, and I believe that would be a factual issue anyway. I think that becomes a factual issue if the defendant wants to prove that, they put on evidence of that at the trial and say, you should have discovered it, here's what reasonably was done, you put on an expert or whatever it takes. But on this record, we're here on a motion to dismiss, and there's no such evidence that anything should have triggered a response from the companies to audit their own records prior to, you know, the notice from Caballero. So with that, you know, I'll conclude. All right. Thank you. You didn't provide enough sufficient information. Yes, Judge. And we know this specifically because plaintiff has pleaded in his complaint that it had sufficient information to discover these alleged improper deposits, and there's two allegations that really plaintiff pleaded itself out of this cause of action. And if we look at the amended complaint, which is A-19 of the appendix, there's two allegations that are relevant. The first one is in paragraph 10, where plaintiff pleads that it received account statements for each of these alleged improper deposits. And plaintiff wants to focus on the information its predecessors did not receive, and it identifies copies of the checks. But the discovery rule is only focused on whether the plaintiff received sufficient information so that it reasonably should know the injury has been incurred. And as Justice Gordon stated, that if $25,000 should have been deposited into account, then either it is on the account statement or it's not. But the account statements must be reconciled with plaintiff's books and records. And when they're reconciled and there's a reasonable inquiry, then the plaintiff's predecessors would have been able to discover any of these alleged improper deposits. And in this case, we know that had there been any reasonable inquiry and had these account statements been reconciled, the plaintiff could have discovered these alleged improper deposits. And we know that in paragraph 14 of the amended complaint. And what paragraph 14 tells us is that after Cavanetto resigned, the outside accountant reviewed two things from plaintiff's predecessors. One, Cavanetto's practices, and two, the predecessor's books and records. And just on reviewing the books and records, the outside accountant was able to discover the alleged discrepancies with accounts receivables and improper payments. And what this allegation is telling you is that plaintiff's predecessors had sufficient information to discover these alleged improper payments but simply never connected the dots. And when it has the sufficient information the whole time, the discovery was not told. No, and we know that in this case, the only reason that the plaintiff's predecessors were successful at their work was because of their lack of sufficient information on the only reason. Isn't there an argument that up to that point in time when the audit took place that they didn't have sufficient information as to the lack of or misdirected deposits? Isn't that part of what their argument is, that the audit brings on the lights and rings the bells, but prior to that, if they didn't have sufficient information, people would not notice that the deposits were being misdirected? You're correct, Your Honor, and that's their argument. But the complaint says otherwise, and the complaint says the whole time they had sufficient information, but prior to the audit and during Kavanaugh's scheme, nobody within the plaintiff's predecessors simply looked, and that does not tell us to have supplementations. That is simply dishonest dealings by its own employee, and that is essentially its own employee fraudulently concealing the cause of action, and that does not tell us to have supplementations against a third party. Fraudulent concealment committed by someone other than the defendant does not tell us to have supplementations, and the reasoning is similar to Haddad's case in which Your Honor cited that the victim is in the best position to discover the wrongdoings, and this was also recognized more in the case of a banking transaction in EuroMotorRails for Southwest Financial, and that court said that an employer, not a financial institution, is in the best position to discover the version of funds by an employee. Whether Kavanaugh was diverting funds and concealing that these alleged payments had been taking place, unfortunately is not relevant to Colt Taylor Bank. They didn't know what was happening there. All they could do was provide the account statements, and that is the notice to the account holder, in this case plaintiff's predecessors, of the activity that has happened in the account statement, and from that point on, it is plaintiff's predecessors' responsibility to review these account statements, conduct a reasonable inquiry, and identify if any discrepancies exist, and so what we see in paragraph 14 is that the information was there, and it was never identified, and once this information was identified, they were able to reconstruct everything that had happened, and specifically if I draw attention to the exhibits to the amended complaint, exhibits B, C, and D, plaintiff is now able to identify everything it says was not included in the account statement. It has the date of the checks, the amount, who it was from, who it was paid to, who it was deposited to, and endorsement. This is all the information, and so what we have here is that it's own books and records at least provided inquiry notice. Inquiry notice allowed them to conduct a full discovery of a full investigation, and when they did so, all the information was there. Counsel discussed Section 406 of Article 4 of the Commercial Code, and he tries to say there's no relevance to this case, but it is very relevant. Section 406 of Article 4 places upon the banking customer the obligation to review an account statement, and specifically Article Section 406 applies to payments, and forgeries, and unauthorized signatures, but the case law discussing 406 recognizes a public policy that requires customers to review their account statements to identify unauthorized transactions, and if there is a public policy that requires a bank customer to review their account statements to identify unauthorized payments made, that public policy must be extended to review of the account statement relating to deposits. It's somewhat illogical to say a customer has to review pages 1 through 5 of an account statement to review the payments made, but has no obligation to review pages 6 through 10, which are the deposits, and case law interpreting Section 406, and specifically Mapleton v. Great Banks, and EuroMotorRails v. Southwest Financial, recognize that when the account holder fails to make a prompt review of its account statements, and thereafter fails to notify the bank of the unauthorized transaction, its claim will be barred. And the real significance of alleviating the account holder of this burden was recognized in EuroMotorRails, and in that case the court said, if we were to alleviate the burden upon the customer of reviewing the account statement, and tore a claim simply because the customer did not review, then we are opening a Pandora's box in which a claim on a negotiable instrument can be brought 50 years later simply because the customer never reviewed the account statement and never brought it to the attention of the court. And allowing a claim to be brought so far after the transaction is complete is contrary to the purpose of the Uniform Commercial Code, which requires certainty in commercial transactions. And the same reasoning applies here. Plaintiff pleads that Capimino resigned in January of 2001 only because he made the decision to outsource his payroll operations. Plaintiff also pleads that prior to Capimino's resignation, it had no cause to suspect his honesty or that he was engaged in any scheme of diverting funds. And so if Plaintiff doesn't outsource his payroll operations, Capimino continues to conceal his cause of action and that diversion of funds. And now we're going and extending this claim further into the future until some intervening act occurs. And we may go another 10, 15 years until this claim is brought to Plaintiff's attention. And now you have a claim in 2025 for the deposits made in 2007 simply because it was being concealed by its own controller. And that is contrary to the purpose of Uniform Commercial Code requiring certainty. Section 406 also has very harsh timelines in that the customer has to bring the unauthorized transaction to the attention of the bank within 30 days or a year. And that's not what's being advocated here. Simply that the account statement, when reconciled with the account statements, is sufficient information to begin the statute of limitations. Thereafter, Plaintiff still has three years to discover its cause of action. That permits quarterly reviews of financials, yearly reviews of financials, and even biannual, or every three years. But after that time, if the cause of action is not discovered in three years, then Plaintiff's claim, as is the case here, will be barred. What is clear from the complaint is that the lack of information, or the alleged lack of information, from Colterra Bank was not the cause of Plaintiff's failure to discover its cause of action. The cause was the conduct of Cabinetto. But that does not toll the statute of limitations. I want to ask you this. What about the trial court at first, when the first complaint was filed, found it to discover a little bit of ploy, but then when it was amended, found that it wasn't applicable? The first ruling by the trial court was a mistake. It ruled that discovery would apply, and procedure is in place to correct that mistake, and that procedure is a motion for reconsideration. The trial court made its ruling, the defendant timely filed a motion for reconsideration, and identified why the court had made errors of law, and the court corrected itself. And so the procedure worked itself out, in that the court identified it made a mistake, and it was corrected. Plaintiff filed an amended complaint, and then the briefing on that amended complaint, in which case Plaintiff pleaded itself out of the discovery rule, brought ourselves to this procedure, where its claim is dismissed by the three-year statute of limitations. Your Honor, I would briefly like to talk about the first issue, which is only whether the three-year or ten-year statute of limitations applies. Proceed. And as Justice Corbin identified at the outset, in terms of which statute of limitation applies, this case is identical to continental casualty. Continental casualty says that a claim for breach of an account agreement between a bank and its customer is governed by the statute of limitations in Article IV, because Article IV relates to account agreements and bank deposits and collections, whereas the general ten-year statute of limitations is just for writing contracts, leases, bonds, bills of exchange. As continental casualty aptly stated, the more specific statute of limitation applies over the general. And that's the same reason why Article IV's statute of limitation applies here. It more specifically relates to the cause of action than the general. There is no support for Plaintiff's claim that this case should be governed by the ten-year statute of limitation simply because it's a common law breach of contract and its claim does not arise under the Uniform Commercial Code. And even if that logic, that faulty logic, is to be applied, this claim still falls under the three-year statute of limitation. Plaintiff certainly could have brought a conversion claim based on its allegation that the claim, the checks, had improper endorsements. But, of course, Plaintiff didn't rely on conversion because Article III also has a three-year statute of limitations and conversion does not permit the discovery rule. Unless there are further questions, I will briefly conclude. Thank you. Your Honors, Plaintiff has pleaded that it had sufficient information to discover each of these alleged improper payments and that the only reason these alleged payments were not discovered was because they were being conceived by Calvin Netto. Once Calvin Netto resigned and another individual reviewed the books and records, these alleged improper deposits were discovered. And so now we have a pleading that says the Plaintiff had sufficient information to discover these alleged deposits but simply never looked. And that is sufficient for this claim to be barred by the discovery rule. In addition, the Plaintiff had an obligation to reconcile its account statements with the books and records, which we know contain sufficient information, but it did not. For that reason, this claim is barred by the three-year statute of limitations. Thank you. Thank you. Thank you, Your Honors. Just a couple of points briefly. With respect to paragraph 14 of the amended complaint, when you look at that, I'm the drafter. I guess I could possibly say that it was inarticulately drafted if the conclusion is that is all that the accountant reviewed. But I'm not sure that that's what that statement says. I don't think that's what I intended it to say. It says, as a result of the foreboding discoveries following Calvin Netto's resignation, the outside accountant prepared to look at the practices in the company's books and records in a nuisance on about June 2011, the accountant issued a report of his findings. I didn't intend to say this is the only thing that the accountant necessarily did. I didn't purport to try to describe what the accountant did. So trying to read the entire case within that one sentence as a limitation, I think, is a way too constrictive reading of that and doesn't properly reflect the facts. And secondly, that's not what the court decided the case on. The court decided the case on the basis of the statement. He made the statement, this statement, the example of which we've been talking about, is sufficient. Receiving these types of statements is sufficient to put somebody on notice. And so the court didn't rely on that. The court relied on that statement itself. If it's a drafting matter, it can be fixed through a second amended complaint. If it's something that's barred by the existence of the statement, which is what the judge decided, that is an issue that he decided as a matter of law precluded the plaintiff from going on and dismissed the amended complaint with prejudice. So I think it's really two different scenarios there. Second thing is with respect to, you know, counsel says the court changed its mind, the court as in the district, you know, the circuit court of Cook County changed its mind, but it was two different judges. It was Judge Markovitz on the original motion. He's the one that said discovery rule applied. It was Judge Snyder that heard the motion reconsider. I didn't think that was supposed to happen. I thought, you know, reconsiderations went with the judge and courtrooms changed. But for whatever reason, it was Judge Snyder. So that's just further proof to this court that reasonable minds could differ whether the discovery rule applies or not in this case, and that means this case cannot be dismissed at this stage on a 2619 motion. The final point I want to make is regarding the policy of 4-406. Again, defendants argue very hard. Defendants argue very hard that 4-406 applies and says, you know, it's the policy, you know, to shut down these claims. If you look at really the policy reason for why the burden of 4-406 is placed on the customer, it's because the customer knows what the items were that was written. The bank does not know whether a $500 check is a $50 check and somebody moved the decimal point down to zero. The bank doesn't know from looking at an item that comes in for collection whether, you know, the payee name has been changed and that there's been fraud in connection with that. That information is within the purview of the customer, and so the statute puts the burden on the customer to identify those. There's no similar policy consideration here where Taylor has given a stack of checks for deposit into the account of Technical Solutions, Inc., and she puts them in Placement Solutions, Inc., or something like that. There's no similar policy arguments that this should be extended at all, and none of the cases suggest that this should be extended to a deposit situation. So thank you very much for your time. I had a question that doesn't really go. I just wonder what happened to Kevin. Is it Kevin? What happened to him? Well, we did bring an action against him, and that action was dismissed, altered, dismissed, removed to refile, and it was not refiled for other than the merits. And then my other question was, when you filed this in June of 2011, why wasn't the complaint brought right then? Why did you wait until February of 2014? Sure, Your Honor. I was not the attorney at the time, and I can tell you that I don't want to get into privileged communications, but we did file, after this court dismissed this case, we did file a legal malpractice action against the attorney at the time, and that's been stayed pending the outcome of this case. So I think that sort of comes without getting into any kind of confidential information. Thank you. All right. The court wants to thank both counsels in a well-briefed manner and well-argued. The court will take it under advisement, and the court is adjourned. Thank you.